(158 App. Div. 449.)

SWEENEY v. EDISON ELECTRIC ILLUMINATING CO. OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. September 23, 1913.)

1. ELECTRICITY (§ 19*)—INJURIES—ACTIONS—PRESUMPTIONS—CAUSE OF ACCIDENT.

In an action for personal injuries received from a falling electric light globe, which could have fallen only because of the negligence of the trimmer in improperly fastening it in place, or because of the malicious act of some other person, the presumption is that it was due to negligence rather than to malice.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

2. NEGLIGENCE (§ 121*)—ACTIONS—BURDEN OF PROOF—CAUSE OF ACCIDENT.

Where a person is injured by the falling of an electric light globe under such circumstances as to raise a presumption of negligence under the doctrine of res ipsa loquitur, the burden is upon the defendant to show that it exercised reasonable care to keep the lamp from falling, but it need not show the cause of the accident; it being sufficient if it exercised care as to all probable causes.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*]

Appeal from Trial Term, Kings County.

Action by James H. Sweeney against the Edison Electric Illuminating Company of Brooklyn. Judgment for the plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and PUTNAM, JJ.

Samuel F. Moran, of New York City, for appellant.

Henry M. Dater, of Brooklyn (George F. Elliott and Jay S. Jones, both of Brooklyn, on the brief), for respondent.

THOMAS, J.  The plaintiff, while making fast a boat at the Thirty-Ninth Street ferry, borough of Brooklyn, at about 5:25 p. m. on Tuesday, November 14, 1911, was struck by a fragment of a glass globe that fell from defendant's lamp that hung outside of and some 7 feet aside the pathway on the ferry bridge.  The top of the globe is fastened by three screws into a ring thrust into a collar, where three bolts engage three slots in it, and then turned so that its rim rests on the bolts.  A chain connects the globe to the lamp for the sole purpose of holding the globe when detached from its fitting in the lamp.  After the accident, defendant's inspector found the ring detached from the globe, on a beam which was beneath the lamp.  The lamp was of the most approved type and was inspected.  The lamp was trimmed on the Saturday before the accident, and was examined every night by the inspector.  The trimming process involves the lowering of the lamp by the rope, the removal of the outer and inner globes, cleaning and refurnishing with carbon, the restoration of the parts, the return of the globe to its place, and rehoisting.  The trimmer stated that he found the lamp and globe in November in good condition.  That is the total of his evidence of care.  The inspector on the night of the accident found the lamp burning with the inner globe intact, but the outer globe was gone, the ring on the beam beneath, and the hook on the chain bent.  In short, the globe by some force had been turned so that the slots in the ring dropped off the bolts, and nothing was broken save as stated.  The ring is not held in place in the lamp by set screws, and it does not appear specifically whether collision with the ferry bridge could disturb the ring, if thoroughly locked in place, nor whether, if the trimmer failed to twist the lamp, so as to make a complete interlocking, the globe could be dismantled by continued vibration.

[1]  It is useless, in a rational investigation of such a happening, to conjecture mysterious causes.  Considering the matter practically, it is a just conclusion that some hand turned the globe so that it fell, or that it was jarred out of place by the external force.  There is an entire absence of statement of any experience relating to similar accidents.  But if a meddler did not climb up and detach the ring, it fell because it was not secured against the effect of shock or vibration.  I assume that it was capable of secure adjustment.  Hence, if it became detached in the absence of a meddler, it was because of failure to twist it thoroughly in place, unless it was moved by some violent disturbance.  But the presumption is against a person ascending and mischievously letting the globe come crashing down in front of a ferryboat already in the slip with two men on the bridge.  As between the man who had the handling of the lamp and some unknown person inclined to malicious mischief, the presumption would be that the fault was with the manipulator.  Of course, this presupposes ordinary conditions.  If it fell during a hurricane, or some natural convulsion, or when the ferryboat crashed into the bridge, the inference of some failure on the part of the defendant could not be drawn for the contemporaneous fall of the lamp.  The lamp had hung in safety from Saturday night to Tuesday night, with the use of the slip for three intervening days.  Had there been evidence that there was no such im-

minent cause for the fall of the globe as I have suggested, then the
fall with the attendant facts was sufficient evidence of culpable omis-
sion of duty on the part of defendant's servant to require it to show
that no neglect on its part existed in relation to any matter that could
in reasonable expectation cause the fall.

It is a used expression that in such case the burden of explanation
rests on the defendant, or that it must show a cause of the accident
consistent with the exercise of requisite care on its part. The law does
not require impossibilities. The cause of such an event may not be
ascertainable. But the burden cast on the defendant by the prima facie
case is to show that it exercised the legally requisite care to do those
things which, if omitted, would probably be the cause of the lamp
falling. The nature of the case may be such that the defendant could
make the proof so firm and incontrovertible that the jury could not
justly disregard it, or that even the court should regard it as proven.
But it might be the defendant's misfortune that he could not give evi-
dence of such strength. For instance, in the present case the trimmer
does not say that he remembered locking the globe in place, and his
act was so often repeated that he could not say that from specific
recollection. He could only say that he did make a secure union, be-
cause that was his intended act on every night. But if a failure to do
it fully be a competent cause of the part to shift and fall, and the facts
justify the finding of no other competent cause, or if the testimony of
the giving of it show the defendant's witnesses unworthy of belief,
then the jury may prefer the presumption of negligence to the at-
tempted rebuttal of it. The court stated the matter in a sentence:

"Hence the main question for you to decide is whether the defendant had
discharged the duty incumbent upon it in keeping that lamp in a reasonably
safe condition."

[2] But the defendant's counsel made several requests to charge.
As to some of them the court and counsel were at cross purposes, and
one was:

"That, even if the defendant has not shown just the cause of the accident,
the jury cannot assess damages against the defendant here, because it is not
able to tell why this accident happened."

The cause of the fall of the lamp was an important, but not indis-
pensable, ascertainment. So far as it enters into the matter, the bur-
den of showing it is on the person having the thing in its control.
Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82
Am. St. Rep. 630. If it were known, the defendant's care in respect
to the cause could be considered. But if the cause were not discovered,
yet if the defendant exercised reasonable care in regard to the things
that in reasonable expectation would keep the lamp intact, it was
faultless. Hubener v. Heide, 73 App. Div. 200, 206, 76 N. Y. Supp.
758. The burden of explanation is thrown on the defendant (Robin-
son v. Consolidated Gas Co., 194 N. Y. 37, 86 N. E. 805, 28 L. R. A.
[N. S.] 586), but to explain that it was not negligent, rather than the
cause of the accident (Piehl v. Albany Railway Co., 30 App. Div. 166,
169, 51 N. Y. Supp. 755). When the rule res ipsa loquitur is appli-
cable, the facts are deemed to "afford sufficient evidence that the acci-

dent arose from want of care on its part" (Breen v. N. Y. C. & H. R. R. R. Co., 109 N. Y. 297, 300, 16 N. E. 60, 61, 4 Am. St. Rep. 450), and the defendant must rebut this inference. But it is not necessary to show the cause of the accident in order to do this. It would be helpful if the defendant could make the specific cause known, and then show its care respecting it. But if it negatives the presumption of negligence, by showing its care as to all probable cause, that is sufficient. The jury may well have inferred that the defendant must show the specific cause of the fall, and that respecting it the defendant was not negligent.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur, except BURR, J., not voting.