(158 App. Div. 422.)

HUSCHER v. NEW YORK & QUEENS ELECTRIC LIGHT & POWER CO.

(Supreme Court, Appellate Division, Second Department.    October 3, 1913.)

1. NEGLIGENCE (§ 134*)—ACTIONS—BURDEN OF PROOF—WRONGFUL ACT.
    To establish a cause of action for an injury, there must be evidence, either direct or circumstantial, of a wrongful act on the part of the defendant.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267–270, 272, 273; Dec. Dig. § 134.*]

2. NEGLIGENCE (§ 134*)—ACTIONS—BURDEN OF PROOF—WRONGFUL ACT—CIRCUMSTANTIAL EVIDENCE.
    To establish a wrongful act by circumstantial evidence, it is not necessary to exclude the possibility of the injury happening in any other way, but only to raise the inference by a fair preponderance of the evidence that it was due to a wrongful act.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig §§ 267–270, 272, 273; Dec. Dig. § 134.*]

3. NEGLIGENCE (§ 121*)—ACTIONS—BURDEN OF PROOF—"RES IPSA LOQUITUR."
    The doctrine of "res ipsa loquitur," which is a concise way of saying that the circumstances are such as to justify the jury in inferring negligence as the cause of an injury, does not relieve the plaintiff of the burden of the issue, nor raise a conclusive presumption in his favor, but only requires the defendant to go forward with the proof to rebut the inference of a wrongful act, either by showing the precise cause of the accident to be one for which he was not responsible, or by showing that he fully discharged his duty in the matter, and if, at the close of the entire case, the presumption, arising from the happening of the accident, does not fairly preponderate over the evidence introduced by defendant as to his freedom from wrong, the plaintiff has failed to make a case.
    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–220, 224–228, 271; Dec. Dig. § 121.*
    For other definitions, see Words and Phrases, vol. 7, pp. 6136–6139; vol. 8, p. 7787.]

4. ELECTRICITY (§ 19*)—ACTIONS FOR INJURY—PRESUMPTIONS—CAUSE OF INJURY.
    Where a man was electrocuted by coming in contact with the wires of a dark electric lamp, which was hanging only four or five feet above the street, the circumstances were sufficient to cast upon defendant the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

burden of showing that it had exercised reasonable care in the construction and maintenance of the lamp.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

5. ELECTRICITY (§ 19*)—ACTIONS FOR INJURIES—SUFFICIENCY OF EVIDENCE—NEGLIGENCE OF DEFENDANT.

In an action for such death, evidence *held* sufficient to rebut the inference arising from the accident, and to show by the great weight of evidence that the defendant had discharged the duty of reasonable care, so that a verdict for the plaintiff should be set aside.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

6. NEGLIGENCE (§ 142*)—VERDICT OF JURY—SPECIAL INTERROGATORIES—FINDINGS INCONSISTENT WITH GENERAL VERDICT.

Where the jury returned a general verdict for the plaintiff in an action for death caused by the defendant's negligence, but answered special questions as to whether the defendant exercised reasonable care by saying that they did not know, such verdict indicates that the plaintiff had not sustained the burden of proof imposed by law.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 400–403; Dec. Dig. § 142.*]

Appeal from Special Term, Queens County.

Action by Florence E. Huscher, as administratrix of William H. Huscher, deceased, against the New York & Queens Electric Light & Power Company. From an order setting aside a verdict in favor of plaintiff and granting a new trial (139 N. Y. Supp. 537), plaintiff appeals. Order affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and STAPLETON, JJ.

A. Feldblum, of Brooklyn (Philip Levison, of Brooklyn, on the brief), for appellant.

William Rasquin, Jr., of New York City, for respondent.

BURR, J. In an action to recover damages for the pecuniary injury resulting from the death of her husband through defendant's negligence, plaintiff recovered a verdict. She appeals from an order setting aside said verdict and granting defendant's motion for a new trial.

Defendant was engaged in the business of furnishing electric power for lighting purposes in the borough of Queens. In connection therewith it maintained a pole on the southwest corner of Rockaway Road and South street in what was formerly the village of Jamaica. From the upper part of this an arm projected over the street, and from the end of this arm a lamp was suspended. When the lamp was in place it was about 25 feet from the ground. It became necessary, however, from time to time that it should be lowered to a point 4 or 5 feet from the ground in order to trim and clean it. Appliances were attached to the lamp and the mast arm for that purpose.

At about 10 o'clock on the evening of May 7, 1912, William Huscher, plaintiff's intestate, was proceeding in a diagonal direction from the northeast to the southwest corner of said intersecting streets. It was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

raining, and the night was dark. At that time the lamp had been lowered from its normal position, and hung over the roadway about 4 or 5 feet from the ground. The lamp was unlighted, but a powerful current of electricity was passing over the wires with which the lamp was connected, sufficient, if communicated to a human being, to cause death. Huscher had an umbrella in his hand, which he was holding over him to protect him from the storm. Although there was some conflict of testimony upon this point, the evidence justified the finding of the jury that some portion of his umbrella came in contact with some portion of the lamp or its appurtenances, and that as a result he received an electric shock, from which his death followed within a few moments.

[1] Plaintiff, invoking the application to these facts of the doctrine of res ipsa loquitur, contends that therefrom arose a presumption of defendant's negligence which justified the jury's verdict. A cause of action is not complete by proof of the occurrence of an injury. In addition thereto, there must be evidence of a wrongful act or an omission of duty upon the part of the person on whom it is sought to charge liability.

[2, 3] In some instances this is accomplished by direct evidence, showing precisely the character of the act or the omission, and its culpable nature. In some cases the evidence is circumstantial, and not direct; and in civil actions it is not necessary that plaintiff should exclude the possibility that the occurrence might have happened in any other way than that alleged. Given defendant's responsibility for such causal act or omission, and it is sufficient if the inference that it occurred as alleged fairly preponderates over any other inference or conclusion that may be drawn from the evidence. 29 Cyc. 625; 33 Cyc. 1068. In any case, however, there must be evidence of one sort or the other. "Res ipsa loquitur" is a concise way of saying that the circumstances shown to have been attendant upon an occurrence producing injury are themselves of such a character as to justify a jury in inferring negligence as the cause thereof. 34 Cyc. 1665; Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530; Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630; Robinson v. Consolidated Gas Co., 194 N. Y. 37, 86 N. E. 805, 28 L. R. A. (N. S.) 586; Hardie v. Boland Co., 205 N. Y. 336, 98 N. E. 661; Chenall v. Palmer Brick Co., 117 Ga. 106, 43 S. E. 443. When the injury results from a defective appliance, "the apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user. Both inspection and user must have been at the time of the injury in the control of the party charged." 4 Wigmore on Evidence, § 2509.

But the doctrine of res ipsa loquitur does not relieve plaintiff of the burden of the issue, nor raise a conclusive presumption in his favor. The fact of the occurrence and the attending circumstances merely furnish some evidence, which requires the defendant "to go forward with his proof" (Ross v. Cotton Mills, 140 N. C. 115, 52 S. E. 121, 1 L. R. A. [N. S.] 298), and rebut the presumption of negligence arising therefrom (Kaples v. Orth, 61 Wis. 531, 21 N. W. 633;

Robinson v. Consolidated Gas Co., supra; Hubener v. Heide, 73 App. Div. 200, 76 N. Y. Supp. 758. This presumption may be overcome by evidence showing precisely the cause of the occurrence, and that the cause is attributable to some person other than defendant, for whose acts he is not responsible, or by evidence showing precisely the cause of the occurrence and that such cause, although not attributable to a third person, is of such a character that defendant is not culpable in connection therewith, but that such occurrence is in the nature of an accident unavoidable by the use of that degree of care with which defendant is chargeable, or, finally, by evidence which, while it may not be sufficient to disclose the precise cause of the occurrence, is sufficient to show that defendant's entire duty in connection therewith was discharged. 29 Cyc. 624; Baran v. Reading Iron Co., 202 Pa. 274, on page 286, 51 Atl. 979; Barber v. Manchester, 72 Conn. 675, 45 Atl. 1014; Sweeney v. Edison Elec. Ill. Co., 143 N. Y. Supp. 636. If at the close of the entire case the presumption arising from the happening of the accident and the attendant circumstances does not fairly preponderate over that introduced by defendant respecting his freedom from culpability, plaintiff has failed to make out a case, and defendant should be absolved.

[4] Applying these rules to the facts of this case, what result follows? To permit an unlighted lamp, charged with electric current of a high intensity, to remain suspended over a traveled highway, upon a dark and stormy night, at such a distance from the ground that persons lawfully making use of said highway are likely to come in contact therewith, is highly dangerous. If defendant was responsible for maintaining it in that position, it might well be held chargeable with the consequences resulting therefrom. The position of the lamp, however, is the only ground, as it seems to us, upon which defendant can be chargeable in this case. The fact that it was unlighted, that it was defective, so that it could not be lighted (if such were the fact), was not a source of danger to persons using the highway. So long as the lamp remained suspended in its normal position, 25 feet above the ground, the ordinary pedestrian would not be injured by contact with it, whether it was lighted or unlighted. For the same reason, the fact that the wires which conducted the current to the lamp were not insulated was not a ground for imputing negligence to defendant, under the circumstances here disclosed. But the lamp was under the control of defendant, and, except in the case of a trespasser unlawfully disturbing it, under its exclusive control. Lamps which are properly constructed to be used at a point of safety 25 feet above a traveled street do not ordinarily descend to a point 4 or 5 feet from the ground, unless there is some defect of construction, maintenance, or want of repair, or unless some outside agency draws them down.

[5] Under the circumstances above detailed, we think that it was incumbent upon defendant to show that it had exercised reasonable care in the construction of the lamp and in the maintenance thereof, including under the word "maintenance" necessary repair, inspection, and operation. Byrne v. Boston Woven Hose Co., 191 Mass. 40, 77 N. E. 696. We think that defendant so successfully met this burden

that, if the court would not have been justified at the close of the entire case in directing a verdict in its favor, a contrary verdict was properly set aside as against the weight of the evidence. So far as the construction of the lamp is concerned, there is nothing to contradict the evidence offered by defendant that the devices employed were standard throughout the country, and no better method of construction was established. Plaintiff did seek to show by cross-examination of some of defendant's expert witnesses that there was in existence a device intended to be placed at the end of the mast arm, by which, if the lamp came down, it was disconnected from the circuit, provided the device operated, and in such event the lamp would cease to be a source of danger through transmitting electric current. But the same witnesses testified that this device, when tested, did not operate successfully, and that no one used it, and there was no evidence to the contrary. Neither was there any satisfactory evidence that the appliances were defective through lack of repair.

One of plaintiff's witnesses did testify that after the accident he examined the snap at the end of the rope, and that the spring in it was broken. This rope is used to raise and lower the lamp for trimming purposes, and the snap fastened the end of the rope to an eyelet on the pole. The force of this testimony was wholly destroyed by the physical facts as established by all of the witnesses called by either party who testified on the subject. The rope was not intended to hold the lamp in place, but simply to raise and lower it. If the snap had broken, thus releasing it, this would not have permitted the lamp to come down. To accomplish this, the collar of the lamp must be raised 6 or 8 inches out of the socket in which it rests. Again, after the lamp had come down to the point at which it hung when the accident happened, the end of the rope to which the snap was attached would have been close up to the pulley at the end of the mast arm, and some 25 feet above the ground, where the witness could not have seen or touched it, as he claimed that he did. To reach it, it would have been necessary to climb the pole, and one of plaintiff's witnesses, the only one testifying on the subject, said that on this occasion he did this, and after the lamp was retrimmed, and a new inner globe supplied, it was lighted, raised to its proper place, and thereafter continued to burn without further change or alteration.

But if it could be asserted that there was some evidence of defect through want of repair, there was no evidence of actual notice to defendant, nor was there credible evidence that the lamp had descended from its normal position more than an hour or an hour and a half before the accident happened. With a single exception, no witness called by plaintiff saw the lamp down earlier than about 9 o'clock on the evening of May 7th, when decedent was killed, and some of these witnesses testified affirmatively that at that hour it was up and in its normal position, although unlighted. One witness called by plaintiff did testify that while in the employ of the Shults Bread Company, and delivering bread to its customers, he noticed on the morning of the 6th of May, at about half-past 3, that the lamp was down, and that about the same time on the morning of the 7th it was in the same

condition. Not only is he contradicted as to this by the other witnesses called by plaintiff, as well as those called by defendant, but it appeared by the testimony of the foreman and bookkeeper of the baking company, verified by its records, that this witness left the employ of said company on the 29th of April, and that no bread was delivered to him for distribution to its customers after that date. As the learned trial justice said:

"The most liberal view of the evidence would only show that the lamp was down from an hour to an hour and a half."

So far as the operation of the lamp is concerned, the evidence of defendant's employé charged with the duty of trimming the lamp is to the effect that he trimmed the same on the 1st of May, and restored it to its place at the top of the pole, and there is no evidence that any one connected with the defendant touched it from that time until after the accident had occurred.

In view of the mechanical construction of the lamp, and in view of the fact that it continued in proper position for more than seven days afterwards, it is far more probable that the lamp was caused to descend, on the evening of May 7th, by some other agency, for which defendant is not responsible, than that on the occasion when the trimmer trimmed the lamp he improperly adjusted it. This presumption is strengthened by the fact that from the necessities of the case the lamp could be lowered by any person who might from malicious or mischievous motives desire to do so, without there being any defect either in the construction or maintenance of the appliances thereof. But, even if the hypotheses were equally reasonable, plaintiff has failed to establish her cause of action. Yaggle v. Allen, 24 App. Div. 594, 48 N. Y. Supp. 827; McGrath v. St. Louis Transit Co., 197 Mo. 97, on page 104, 94 S. W. 872.

So far as the duty of inspection to discover defects or appliances out of order is concerned, defendant was bound to exercise reasonable care with respect thereto. But it would be quite unreasonable to charge it with negligence through lack of proper inspection, when the defect had existed for so short a time before the fatal occurrence. To meet the presumption of negligence, therefore, arising from plaintiff's evidence of the occurrence and the surrounding circumstances, defendant has established by uncontradicted evidence that the method of construction was reasonably safe, and by the great weight of evidence that in the maintenance of the appliances, so far as repair, inspection, and operation are concerned, it discharged the duty of reasonable care.

[6] It is a significant fact that the jury, while finding a general verdict for the plaintiff, answered two questions specifically submitted to it as follows:

"Did the defendant exercise reasonable care in the erection of its lamps and poles and the apparatus thereon? A. We do not know.

"Did the defendant exercise reasonable care in maintaining said lamps, poles, and other apparatus thereon? A. We do not know."

If they were unable to determine these questions, plaintiff had not sustained the burden of proof which the law imposes upon her. Plain-

tiff did not establish the precise cause of the occurrence resulting in the injury; neither did the defendant, but it did overcome the presumption that it resulted from its negligence.

The order setting aside the verdict and granting a new trial should be affirmed, with costs.   All concur.