(93 Misc. Rep. 481)
### FISHER v. CITY OF NEW YORK.

(Supreme Court, Appellate Term, First Department.   February 10, 1916.)

1. MUNICIPAL CORPORATIONS ⊙⟞857—PERSONAL INJURY—OBJECT FALLING
   FROM BRIDGE—PRESUMPTION.
      In an action for injury to plaintiff, while at her stand in a public
   market under a bridge, from being struck by an iron plate falling from
   the bridge, wherein defendant admitted the service of the proper statu-
   tory notice, that the plate fell from the bridge where some employés of
   the bridge department were at work, and that one of them had dropped
   the plate, it was the duty of the defendant city, at the close of the plain-
   tiff's case, to go forward with the proof and rebut the presumption of neg-
   ligence.
      [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   1812;   Dec. Dig. ⊙⟞857.]

2. MUNICIPAL CORPORATIONS ⊙⟞857—PERSONAL INJURY—SUFFICIENCY OF EVI-
   DENCE—NEGLIGENCE.
      In such action, evidence held insufficient to rebut the presumption of
   negligence from the happening of the accident.
      [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   1812;   Dec. Dig. ⊙⟞857.]

Appeal from Municipal Court, Borough of Manhattan, Second Dis-
trict.

Action by Rosie Fisher against the City of New York.   From a
judgment dismissing the complaint, plaintiff appeals.   Reversed, and
new trial ordered.

Argued January Term, 1916, before GUY, BIJUR, and GAVE-
GAN, JJ.

Lester W. Eisenberg, of New York City, for appellant.

Lamar Hardy, Corp. Counsel, of New York City (Terence Farley
and William E. C. Mayer, both of New York City, of counsel), for re-
spondent.

GUY, J.   Plaintiff claimed that on February 10, 1915, when she was
at her stand in the public market under the Williamsburgh Bridge,
in the borough of Manhattan, she was struck by an iron plate that
fell from the bridge, and the action was brought to recover damages
for the injuries sustained.   It appears that the plate was 20 inches
long, 10 inches wide, and three-eighths of an inch thick.

[1] Defendant conceded that the proper statutory notices had been
served, that the iron plate fell from the bridge, that immediately prior
to the happening of the accident there were some employés of the
bridge department at work on the bridge, and that one of these men
dropped the plate.   Under the circumstances disclosed by the evidence,
it was the duty of the defendant at the close of the plaintiff's case to
go forward with the proof, and rebut the presumption of negligence.
Huscher v. N. Y. & Queens Electric L. & P. Co., 158 App. Div. 422,
143 N. Y. Supp. 639;   Sweeney v. Edison Electric Illuminating Co.,
158 App. Div. 449, 143 N. Y. Supp. 636.

[2] This is the way the defendant explained the accident: Benjamin

⊙⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Jamin was working at a place known as panel No. 86 on the Williams-burgh. Bridge on the day in question, and his work called upon him to remove "a certain plate" on that bridge and have it painted and re-placed. He was working on the east side of a column, and there were two other workmen there—Halley on the east side and Lampe on the west side of the column. Jamin testified:

"Well, we were taking off the plate. The plate— There was 18 holes in the plate, and we take off the plate, and paint it, and drive it up, and rivet it, according to the instructions. In handing up the plate, Mr. Halley handed it to me, and he said, 'Are you grabbing it?' And I said, 'Yes,' and not thinking about it— There was a big trolley car coming by at the time, and it gave me a brush, and I let it go; and now, having a hold of the plate in full, I said, 'Let go,' not thinking that it would go down the hole, and that plate went down in the hole, and my friend Lampe was there three or four seconds later looking down into the drip pan at the plate, and I went and looked at the plate."

Samuel Hamburger, an engineer of the bridge department, testi-fied that the three employés were working on top of a longitudinal girder; that there were tracks "on both sides of the large girder" on which they were working; that these tracks were about ten feet apart, "which gave them a clearance distance in which to work of about 24 inches"; that trolley cars passed about every 15 seconds, and it would not have been practicable to stop the railroad traffic on the bridge while the work was being done; that all the space of the en-tire elevated trolley and the entire surface car system had been con-structed underneath with drip pans, which pans consist of steel plates about one-quarter of an inch thick; that an attempt had been made to cover the entire area under the structure, and "that has been done so far as it practically can be carried out." While this witness stated that it was possible to cover the space beneath the tracks and up to the column, so that nothing could fall to the street, he said that that was not practicable. It cannot be held that the defendant satisfactorily explained that the accident happened despite the exercise of reasona-ble care on its part.

Respondent contends that because Jamin, defendant's employé, said that the trolley car "gave me a brush," the proximate cause of the injuries to the plaintiff was "the brush of the trolley car against Jamin," causing him to drop the plate, and the secondary cause was the ex-istence of the small space between the drip pan and the girder through which the plate fell to the street. Jamin, however, did not say that the trolley car brushed against him; neither did he say how far away the trolley car was when it gave him a "brush." The engineer said that the tracks "on both sides of the girder" on which the men were working were about 10 feet apart, "which gave them a clearance distance in which to work of about 24 inches." It is not apparent how, with tracks 10 feet apart, there would be a space of only 24 inches for the workmen.

Further, Jamin testified that, "not thinking about it," he let the plate go, and that his friend Lampe was there three or four seconds later, looking down into the drip pan at the plate, and Jamin went and looked at the plate. Respondent claims that the plate went through

the space between the girder and the drip pan; but the defendant's testimony shows that it fell into the drip pan, and the workmen saw it there after Jamin let it go. If the workmen's testimony was correct, it does not appear how the plate fell into the street from the drip pan.

Defendant put in evidence diagrams showing conditions at that part of the structure from which the plate fell; but the diagrams are not annexed to the return, and some of defendant's evidence cannot be understood without reference to them.

The contradictory and unsatisfactory evidence presented by the record does not rebut the presumption of negligence from the happening of the accident, and the judgment must be reversed, and a new trial ordered, with $30 costs to appellant to abide the event. All concur.