■ RICHARD P. MURPHY, Respondent, v. CITY OF NEW YORK, Appellant-Respondent, and WELSBACH CORP., Appellant.— In an action to recover damages for personal injury, the two defendants appeal as follows from a judgment of the Supreme Court, Queens County, entered May 15, 1962 after trial, upon a jury's verdict in the plaintiff's favor for $20,000 against both defendants, and upon the court's decision [rendered after the verdict pursuant to stipulation] in favor of the defendant city upon its cross complaint against the defendant Welsbach Corp.: (a) The defendant city appeals from so much of the judgment as is in plaintiff's favor against it. (b) The defendant Welsbach appeals from the whole of said judgment. Judgment reversed on the law and the facts, without costs, and the complaint and cross complaint dismissed on the law. The metal door of a lamppost, which was about one foot from a street curb, fell off the post and struck plaintiff's knee as he, while in bent position on the ground alongside the post, was about to open a toolbox which was at the bottom of a motor truck parked at the curb. The door was 18 inches long and 10 inches wide, and its bottom was from 2 to 3 feet above the ground. The design for affixing the door to the post was as follows: two lugs at the bottom of the door would fit into appropriate places in the door space of the post, and two screws at the top of the door would go through the door and into the post. The screws were of the type that any ordinary screw driver could remove. Defendant Welsbach, under a contract between it and the defendant city, was required to repair defective street lighting post or pole

equipment, and to make replacements when necessary. The city was required to supply the posts or parts for replacement. The contract also provided that Welsbach would indemnify the city as to claims for injury resulting from Welsbach's negligence or from its fault in performing the contract. That the contract covered the post in question is not disputed. Consolidated Edison Company, the power company which supplied electric current to the street lights, was not made a party to this action, even though it also had lawful access to the lamppost and its equipment. At the trial, no evidence of negligence was adduced; the court permitted the jury to find for the plaintiff on the theory that the doctrine of *res ipsa loquitur* was applicable. In our opinion, this was error. It was not established that defendants or either of them had exclusive control of the post (cf. *Mercatante* v. *City of New York*, 286 App. Div. 265, 268, motion for reargument and for leave to appeal denied 286 App. Div. 964; *Nabson* v. *Mordall Realty Corp.*, 257 App. Div. 659, 662); and the situation was not one in which the facts as to the cause of the accident were necessarily accessible to the defendants and inaccessible to the plaintiff (see *Ravo* v. *Lido*, 17 A D 2d 476, 479). Under such circumstances, to charge defendants with negligence would be mere speculation, guess or surmise (*Manly* v. *New York Tel. Co.*, 303 N. Y. 18, 25–26; *Galbraith* v. *Busch*, 267 N. Y. 230). We are not persuaded to the contrary by the cases cited in the dissenting memorandum with reference to situations of possible interference by third parties and of falling objects in a public street. The doctrine of *res ipsa loquitur* was not involved at all in *Schwartz* v. *Merola Bros. Constr. Corp.* (290 N. Y. 145) or in *Boylhart* v. *Di Marco & Reimann* (270 N. Y. 217). In none of the other cases cited was there (as here) an unlimited and easy access by the public to the subject area or instrumentality. In *Neuhoff* v. *Retlaw Realty Corp.* (289 N. Y. 293) a paint pail fell from defendant's apartment house onto the sidewalk, where it struck the plaintiff. In that situation, the doctrine was held applicable only because: (a) defendant had had painters working in the building; (b) defendant's superintendent took the pail immediately after the accident; and (c) the pail was not produced at the trial. The case of *Higgins* v. *Ruppert* (124 App. Div. 530) and the case of *Robinson* v. *Atlantic & Pacific Tea Co.* (184 Misc. 571, affd. 269 App. Div. 977) both involved injuries in store premises to patrons who were there as business invitees. In *Volkmar* v. *Manhattan Ry. Co.* (134 N. Y. 418), metal parts that had broken off defendant's elevated railroad structure fell down and struck plaintiff who was driving a wagon on the street. In *Bourg* v. *General Outdoor Adv. Co.* (232 App. Div. 601) the evidence permitted a finding that the electric light bulb which struck plaintiff on the sidewalk had fallen from the roof of defendant's building. Similarly, in *Sweeney* v. *Edison Elec. Illuminating Co.* (158 App. Div. 449) the fragment of a glass globe that struck plaintiff while he was making fast a ferry boat had fallen from defendant's lamp which hung on the ferry bridge. It is also our opinion that the amount of the verdict was excessive. If we were not reversing the judgment and dismissing the complaint and cross complaint, we would reverse the judgment and grant a new trial unless plaintiff stipulated to reduce the verdict to $10,000. Ughetta, Acting P. J., and Christ, J., concur; Brennan, J., concurs in the result, with the following memorandum: I concur in the reversal of the judgment and the dismissal of the complaint and cross complaint and with the finding that the verdict was excessive. However, I am unable to accept the view that the doctrine of *res ipsa loquitur* is inapplicable because there was "an unlimited and easy access by the public to the subject area or instrumentality," as stated by the Acting Presiding Justice and Mr. Justice CHRIST. It is true that the door could be loosened from its position on the pole only by the use of a screw driver or

like instrument. But in my opinion, the possibility that a member of the general public might have loosened the screws for no apparent reason is too remote to warrant our interference with the determination below. There was evidence adduced at the trial to the effect that the Consolidated Edison Company (which was not made a party to this action) also had lawful access to the lighting post and pole equipment. The power for the street lights was supplied by the Edison Company. The connection to the power line was within the base of the pole. The lamp in question was on a group control circuit, i.e., there were five lamps controlled from one location, and the controls and fuses therefor were under the Edison Company's jurisdiction. There were three power failures involving the five lights in this group control circuit during the month preceding the accident, and the Edison Company was notified of such failures. On these occasions it was necessary for the company to check the entire circuit, locate the defect and make repairs. While there was no direct proof that the particular pole in question was entered on any of these occasions, the plaintiff failed to establish that exclusive dominion over the subject door resided in either or both defendants (cf. *Galbraith* v. *Busch*, 267 N. Y. 230; *Silverberg* v. *Schweig*, 288 N. Y. 217; *Mercatante* v. *City of New York*, 286 App. Div. 265). There is no evidence that the city assumed responsibility for any negligence of the Edison Company respecting the poles. The relationship between the city and the Edison Company was not the subject of proof. If the Edison Company entered the poles to make repairs in its equipment merely by permission of the city, the city is not responsible for any negligent act of the Edison Company in the absence of proof of notice of the negligent manner (if there be such) in which the work was performed (see 2B Warren's, Negligence, pp. 53–54; *Ehret* v. *Village of Scarsdale*, 269 N. Y. 198, 204; *Masterton* v. *Village of Mt. Vernon*, 58 N. Y. 391). Kleinfeld and Hopkins, JJ., concur in the majority's finding that the verdict was excessive in amount and that a new trial should be granted unless the plaintiff stipulates to reduce the verdict to $10,000; but dissent from the majority's determination that the complaint and cross complaint should be dismissed, and vote for a new trial on the ground stated, with the following memorandum by Hopkins, J. (in which Kleinfeld, J., concurs): In my opinion, the court properly presented the case to the jury on the theory of *res ipsa loquitur*. The city was under a nondelegable duty to maintain its streets and the accessories thereof, including the lampposts, in a reasonably safe condition (*Klepper* v. *Seymour House Corp.*, 246 N. Y. 85, 90; *Koehler* v. *City of New York*, 262 N. Y. 74, 78; *Fisher* v. *City of Mt. Vernon*, 41 App. Div. 293, 295; *Weiser* v. *City of New York*, 5 A D 2d 702, affd. 7 N Y 2d 811; 19 McQuillin, Municipal Corporations [3d ed.], §§ 54.62, 54.63). That duty continued, although the city engaged Welsbach under contract to "make repairs and replacements of defective or damaged street lighting post or pole equipment when found necessary." Nor did the duty disappear because the Edison Company supplied power to the post, and sometimes entered a post to replace a control fuse. In any event, the doctrine of *res ipsa loquitur* applies where the agency causing the injury is under the control of a party who has a nondelegable duty of supervision and maintenance and who shares control with his contractors (*Schroeder* v. *City & County Sav. Bank*, 293 N. Y. 370, 374; *Beinhocker* v. *Barnes Development Corp.*, 296 N. Y. 925). Thus, the city's liability could not be altered because the Edison Company was not a party to the action. Moreover, it must be observed that proof was lacking at the trial to show that Edison ever entered the post, or that the post in fact contained a control fuse requiring the supplier of power to enter it. Hence, the plaintiff was not obliged to introduce further proof beyond the falling of the door from the post while he was lawfully on the street and beyond the injury resulting

from the impact of the door upon his knee. The doctrine of *res ipsa loquitur* then intervenes upon the presumption that in the ordinary course of events the accident would not have happened if proper care had been used by the parties in control (*Breen* v. *New York Cent. & Hudson R. R. Co.*, 109 N. Y. 297, 300; 2 Harper and James, Torts, § 19.5, pp. 1077–1078; Prosser, Torts [2d ed.], § 42, p. 201). The city and Welsbach argue that a child or a passerby using a screw driver might have tampered with the door. That argument has little persuasive force. In any event, it was a factor for consideration by the jury, and the jury must have resolved it by concluding that there was no likelihood of any interference by third parties. The books are replete with cases in which the *res ipsa loquitur* doctrine was held to apply where the interference of third parties was possible but not probable (cf. *Schwartz* v. *Merola Bros. Constr. Corp.*, 290 N. Y. 145; *Boylhart* v. *Di Marco & Reimann*, 270 N. Y. 217; *Neuhoff* v. *Retlaw Realty Corp.*, 289 N. Y. 293; see, also, *Higgins* v. *Ruppert*, 124 App. Div. 530; *Robinson* v. *Atlantic & Pacific Tea Co.*, 184 Misc. 571, affd. 269 App. Div. 977). In short, the use of the doctrine in the case at bar is indistinguishable from its traditional use in the cases which involve injuries caused by objects falling onto a public street (*Volkmar* v. *Manhattan Ry. Co.*, 134 N. Y. 418, 421; *Bourg* v. *General Outdoor Adv. Co.*, 232 App. Div. 601; *Sweeney* v. *Edison Elec. Illuminating Co.*, 158 App. Div. 449, 452). Under the circumstances, it is also logical to say that the cause of the accident was necessarily accessible to the defendants, but hardly accessible to the plaintiff. The court properly found in favor of the city on its cross complaint against Welsbach (*Yanul* v. *City of New York*, 15 A D 2d 828).