JOHNSON, P. J.
This case presents the question of the liability of a restaurant keeper charged with negligently serving a patron with food unfit for human consumption, whereby the patron is made ill.
The complaint alleges that on October 22, 1932, at about 6 o’clock in the evening, plaintiff had dinner served to her for pay at the restaurant of the defendant Townsends California Glace Fruits, Inc., and that through negligence of the defendant and its servants, the food served was impure, unwholesome and unfit for human consumption, and as a result of eating the food so served plaintiff suffered severe illness accompanied by physical and mental pain.
The answer puts in issue the averments charging liability and alleges contributory negligence on the part of plaintiff.
A jury was impaneled to try the action, but when plaintiff rested her case, the trial court granted defendant’s motion for a nonsuit, and judgment was thereupon entered in favor of the defendant. From that judgment plaintiff prosecutes this appeal.
The evidence introduced by plaintiff exhibited the following state of facts: On the evening named plaintiff and her husband had dinner at defendant’s restaurant. Plaintiff’s *779 dinner consisted of cream soup, Waldorf salad, halibut covered with a sauce, mashed potatoes, stewed corn, mince pie, and coffee. The husband’s order was the same as plaintiff’s except that he had veal cutlet instead of halibut. As plaintiff ate the fish, she noticed that it had a peculiar taste, but attributed that taste to some ingredient in the sauce. When she had eaten about two-thirds of the fish and all of the sauce, the taste became more pronounced. Upon examination she saw that the fish had a slimy, soft appearance, and finding that it “tasted spoiled”, she left the remainder uneaten. After finishing dinner, plaintiff spent a short time looking at the shop-windows while her husband made a business call, but in about fifteen minutes after leaving the restaurant, and before her husband could join her at the place where they had left their automobile, she became suddenly ill and suffered from cramps. She made her way to the dressing-room of a neighboring hotel, where she had assistance from the attendants, and they summoned a physician who treated her. About midnight plaintiff was taken home by her husband, and there she wms kept in bed for three or four days.' It was three or four weeks, however, before she could eat solid food. Plaintiff was thirty-eight years of age at the time, had always had good health, and had never previously experienced any such illness from eating fish or any other food. Plaintiff testified also that in her home she had frequently cooked halibut in the same way as the halibut served to her by defendant and that sound halibut so cooked is not soft or slimy, but hard and firm. The physician who attended plaintiff diagnosed her illness as a case of ptomaine poisoning due to taking into the stomach food that had previously become putrified.
It appeared further from plaintiff’s testimony that she had a light breakfast, and, as was frequently her habit, had not eaten lunch, or partaken of food that day between breakfast and dinner. During the day she had pursued her activities in her usual good health, and had experienced no discomfort or pain until seized with cramps soon after leaving the restaurant.
The nonsuit against plaintiff appears to have been granted by the trial court on the ground that the defendant was neither an insurer nor chargeable with any implied warranty *780 of the quality of food served to patrons. Such is the rule in this state as declared in Loucks v. Morley, 39 Cal. App. 570 [179 Pac. 529]; and though the contrary rule has been promulgated in a few states, the decision in the case cited accords with the great weight of authority. The complaint in the present case, however, is not based upon a breach of warranty or on any contractual liability. It charges commission of a tort in the alleged failure of defendant as the proprietor of a restaurant to use reasonable care in selecting, preparing and serving food for consumption by plaintiff as a patron.
The distinction is made clear by comparison of two opinions written by Chief Justice Rugg of Massachusetts and filed on the same day. In Friend v. Childs Dining Hall Co., 231 Mass. 65 [120 N. E. 407, 5 A. L. R. 1100], a leading ease, it was established as the law of Massachusetts, notwithstanding a strong dissenting opinion, that there is an implied contract on the part of a restaurant keeper that food furnished by him to a patron is fit to eat. In that case it was pleaded that the defendant promised, and under implied warranty represented, that the food furnished was, and would prove to be, in good and wholesome condition and fit to eat. In the majority opinion written by the chief justice, the subject of implied warranty of food is elaborately discussed with a historical review of the course of the common law, but recognition is given to the fact that “Apparently the larger number of decisions by courts of this country hold that the liability of an innkeeper and restaurant keeper for furnishing deleterious food rests upon negligence. ’ ’
While the case just cited held restaurant keepers to an implied warranty, it was also held the same day in an opinion of the chief justice in the ease of Ash v. Childs Dining Hall Co., 231 Mass. 86 [120 N. E. 396, 4 A. L. R. 1556], that under a complaint charging negligence, the restaurant keeper, upon proof of causal connection, would be answerable in tort. In that case the court said: “It is well settled that the duty rests upon the keeper of an inn, restaurant or other eating place to use due care to furnish wholesome food fit to eat. Failure in this respect, resulting in injury, is foundation for an action of negligence.”
*781 As already remarked, California is in accord with the weight of authority in adopting the rule that one serving food to be immediately consumed on the premises is not an insurer of the fitness or wholesomeness of the food served, nor is he chargeable with an implied covenant of warranty. But if in Massachusetts, where the rule of implied warranty obtains, action may be predicated on negligence as well as on implied warranty, then with all the more propriety may liability for negligence attach in a jurisdiction where sanction of the rule of implied warranty is withheld.
A concise statement of the rule resting liability on negligence is given in Roseberry v. Wachter, 3 W. W. Harr. (33 Del.) 253 [138 Atl. 273], in these words:
“It is well settled that innkeepers, proprietors of restaurants, lunch-rooms, and other persons "who undertake to furnish the public with food are bound to use due care to see that such food is fit for human consumption, and can be partaken of without causing sickness, injury or endangering human life because of its unwholesomeness and deleterious condition or because of the presence of foreign substances, and for any negligence in this particular which proximately results in injury to a patron they' will be responsible. (Citing eases.) This liability of innkeepers, proprietors of restaurants, eating-houses, etc., is based on their failure to exercise reasonable or ordinary care in the preparation and serving of food to the public, and is not based on their liability as insurers.’’ (Citing cases.)
So in Costello v. Morrison Cafeteria Co., 18 La. App. 40 [135 So. 245], where plaintiff alleged negligence in furnishing unwholesome and poisonous cream cheese, the court ruled that the complaint was not demurrable on the ground that the precise act of negligence causing plaintiff’s illness was not averred, and declared that a general allegation of negligence was sufficient for the purposes of the action.
Likewise in Travis v. L. & N. R. R. Co., 183 Ala. 415 [62 So. 851], it is said at page 424 concerning the duty of the proprietor of a restaurant:
“The law requires that in the selection of the food for his restaurant and in cooking it for his customers, he shall exercise that same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the *782 selection and preparation of food for his own private table. If, in the selection of such food or in preparing it for his customer, the keeper of a restaurant does not exercise that care, and through such want of care his customer who eats the food so selected and prepared is thereby made sick, then he is liable to such customer for the damages so suffered by him.”
And at page 426, it is said further:
“The care which the law exacts of a restaurant keeper is, as we have already said, that degree of care which a man of ordinary prudence, skilled in the art of selecting and preparing food for human consumption, would exercise in selecting and preparing food for his own private use, and not the ordinary care of a man of ordinary prudence who possesses no such knowledge.”
See, also, 26 C. J. 786 and 11 Ruling Case Law, p. 1118.
Cases against restaurant keepers on account of sickness or injury caused by food may be divided into two classes; on the one hand, those in which the ill effects are produced by foreign substances in foods, such as glass, tacks, or dead insects or animals; and on the other hand, those in which the effects are caused by the impure or noxious condition of the foods themselves. We are not concerned here with the presence of a foreign substance in the food served, but many such cases are listed in the notes in 4 American Law Reports, page 1559, and 47 American Law Reports, page 148.
In the present case the charge against defendant is that through lack of due care the food served to plaintiff was impure, unwholesome and unfit for human consumption.
Whether complaint is made of the presence of foreign substances or of an impure and deleterious condition of the food itself, the burden is, of course, upon the complainant to prove negligence on the part of the restaurant keeper. Each case must depend upon its own facts and circumstances; and the reasonable inferences to be drawn from the evidence adduced are ordinarily to be left to the fair and rational judgment of the triers of the facts. In general, it may be said that the plaintiff makes out a prima facie case when there is evidence justifying an inference that the food served was contaminated and unfit to be eaten, and that illness was caused thereby.
*783 Upon such an inference recovery of damages was had by the plaintiff in Doyle v. Fuerst & Kraemer, 129 La. 838 [56 So. 906, Ann. Cas. 1913B, 1110, 40 L. R A. (N. S.) 480], by reason of ptomaine poisoning caused by ice-cream and cakes of which plaintiff partook at a confectionery store. Likewise, in Bark v. Dixon, 115 Minn. 172 [131 N. W. 1078, Ann, Cas. 1912D, 775], a verdict was rendered in favor of the plaintiff who had been served with tainted meat, and in Greenwood Cafe v. Lovinggood, 197 Ala. 34 [72 So. 354], the plaintiff had a verdict because of illness resulting from service of roast chicken which was tainted.
There are also cases where bad fish was found to have been the cause of illness. In George's Restaurant v. Dukes, 216 Ala. 239 [113 So. 53], poisoning resulted from eating a fish sandwich; and in C. O. Hooper Cafe Co. v. Henderson, 223 Ala. 579 [137 So. 419], complaint was made that ptomaine poisoning was caused by fried red snapper. In. that case the plaintiff stated that the fish did not taste right; and after eating a small portion she desisted, and observed that the fish had an unpleasant odor. The ill effects were felt promptly and developed into sickness diagnosed by plaintiff’s physician as ptomaine poisoning. The court ruled that the evidence made a case for the jury, but the verdict in favor of plaintiff was reversed because of refusal of certain instructions proposed by the defendant. In Picard v. Smith, 40 Fed. (2d) 803 [59 App. D. C. 291], damages were recovered in an action of tort for the death of officer Smith, a chief pharmacist in the naval service, who, with two other officers, partook of fried oysters at a luncheon at Harvey’s restaurant in Washington. All three became suddenly ill, and though prompt medical treatment was obtained, officer Smith died that evening. It was held that a sufficient- case of negligence was made out.
In Pantaze v. West, 7 Ala. App. 599 [61 So. 42], damages were had because of poisoning due to eating a dish containing as one of the ingredients some contaminated brains. Speaking there of the functions of the court and the jury in passing upon the question of negligence in such cases, the court said (p. 607):
“It was not for the court to pass upon the conflicting, probable or reasonable inferences to be drawn from the evidence, nor to weigh or balance one inference that could be *784 drawn against another contra inference deduced from other testimony, and thus determine and pass upon different and conflicting inferences afforded by the evidence for or against one or the other of the parties to the suit; for this, under our system, is exclusively for the jury. And as negligence, and the failure to exercise due care and ordinary caution, like any other fact, may be inferred from circumstances, the court would not have been justified in taking the ease from the jury, unless as a matter of law, no recovery could have been had in the case upon any view which could properly have been taken of the evidence and of the reasonable tendencies afforded by it.”
See, also, McPherson v. Capuano & Co., 31 Ga. App. 82 [121 S. E. 580].
In the ease in hand, we are of the opinion that it may not be said as a matter of law that the facts and circumstances brought out in plaintiff’s evidence were insufficient to establish a prima facie case. Indeed, the evidence is closely parallel to that of the plaintiff in Leahy v. Essex Co., 164 App. Div. 903 [148 N. Y. Supp. 1063], where in an action based on implied warranty there was a reversal of a judgment of dismissal given without letting the case go to the jury. The plaintiff’s evidence in that case showed that she was taken violently sick immediately after lunching at defendant’s restaurant and there being served with toast and tea and a piece of chocolate pie, of which she ate only one-half because of its unusual color and taste. She had taken into the stomach nothing previously that day except an orange and a cup of cocoa at breakfast, and a glass of water during the forenoon. The trial judge dismissed the complaint on the ground that it could not be determined with reasonable certainty that the food poisoning was caused by the food supplied by the defendant. The appellate court declared, however, that “the evidence was sufficient' to enable the jury to determine that the plaintiff was suffering from food poisoning, and that the food purchased of the defendant was the cause thereof”, and that the case was, therefore, improperly taken from the jury. Accordingly the judgment was reversed and a new trial ordered.
In like manner here, the plaintiff had breakfasted on crackers and orange juice, and had eaten nothing between breakfast and the dinner served by the defendant, which *785 included fish covered with a sauce. Noticing a peculiar taste, especially after there was no sauce left, plaintiff then observed that the fish was soft and slimy, and for that reason she refrained from eating more. Almost immediately after leaving the restaurant, she became violently ill and suffered from what her physician diagnosed as ptomaine poisoning.
Under such circumstances, it could not be said as a matter of law either that plaintiff was guilty of contributory negligence or that she had not made a sufficient case to go to the jury.
The judgment is reversed and the cause remanded to the municipal court for a new trial.
Conlan, J., and Goodell, J., concurred.
Rehearing denied.