[L. A. No. 15623. In Bank.—June 30, 1936.]

HARRY F. MIX, Appellant, v. INGERSOLL CANDY COMPANY (a California Corporation) et al., Respondents.

Fred A. Steiner and W. W. B. Seymour for Appellant.

Sanders & Jacques for Respondents.

Mark M. Cohen and Irwin M. Fulop, as *Amici Curiae* on Behalf of Respondents.

CURTIS, J.—This is an appeal on the judgment roll alone from a judgment in favor of defendants in an action brought against them by plaintiff for damages for personal injuries resulting from the swallowing of a fragment of chicken bone contained in a chicken pie sold and served by the defendants to plaintiff in a public restaurant conducted by them.

Two causes of action were separately alleged in plaintiff's complaint, one for damages for injuries resulting from an alleged breach of an implied warranty, the other for personal injuries resulting from the alleged negligence of defendants and their servants in the preparation and serving of the chicken pie. A general and a special demurrer was sustained by the trial court without leave to amend, and upon motion of defendants the trial court entered its judgment of dismissal of both causes of action. The basic question, therefore, presented is whether or not either or both of the counts state a cause of action.

The facts upon which the action is based upon either theory, as alleged in the complaint, may be summarized as

follows: On December 17, 1932, plaintiff entered the confectionery shop and restaurant conducted and operated by the Ingersoll Candy Company, a corporation, and John G. Beck, defendants herein, seated himself at a table, and purchased and paid for an article of food known as chicken pie. It was served to him by one of the employees of the defendants, and eaten by him in the restaurant. According to the allegations of plaintiff's complaint, the chicken pie so served contained "a dangerous, harmful and injurious subject, to-wit, a sharp and pointed fragment and/or sliver of chicken bone, which might be and was highly injurious to anyone eating said chicken pie". The plaintiff unknowingly swallowed the fragment of chicken bone, and "was severely injured and suffered great bodily pain and anguish". By the action he sought to recover damages in the sum of $10,000.

It is apparent that the first count attempts to state a cause of action for breach of the implied warranty established by subdivision 1 of section 1735 of the Civil Code which was enacted in 1931 as a part of the Uniform Sales Act. Said provision is as follows: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The first question, therefore, squarely presented is: Does the transaction between a restaurant keeper and a guest constitute a sale to which an implied warranty attaches under section 1735 of the Civil Code?

We are satisfied that logically the answer must be in the affirmative. It was definitely determined in the recent case of *Gindraux* v. *Maurice Mercantile Co.*, 4 Cal. (2d) 206 [47 Pac. (2d) 708], that upon the sale of foodstuff by a retail dealer to a purchaser for human consumption, an implied warranty arose that the commodity was reasonably fit for such purpose and the dealer could be held

liable for damage suffered as the result of eating the food-stuff (in that case, salami), which was not reasonably fit for human consumption. We can see no legal or logical difference between the sale of food by a grocer, in which case the warranty clearly exists, and a sale of a meal by a restaurant keeper. It is argued, however, that in the case of a restaurant keeper or lunch counter proprietor the trans-action constitutes not a sale of goods but the furnishing of services, and this being so, as section 1735 of the Civil Code has reference only to a sale of goods, said section has no application to such a transaction. It follows that the problem presented is primarily this: When food is served in a restaurant, does the transaction constitute a sale of *food*, or is it a sale of service?

It must be conceded that there is considerable authority for the position that a restaurant keeper does not sell the food which he serves his customers. Among the leading cases cited in support of this theory are: *Travis* v. *Louisville & N. R. R. Co.*, 183 Ala. 415 [62 So. 851]; *Merrill* v. *Hodson*, 88 Conn. 314 [91 Atl. 533, Ann. Cas. 1916D, 917, L. R. A. 1915B, 481]; *Roseberry* v. *Wachter*, 33 Del. 253 [138 Atl. 273]; *Rowe* v. *Louisville & Nashville R. R. Co.*, 29 Ga. App. 151 [113 S. E. 823]; *Kenny* v. *Wong Len*, 81 N. H. 427 [128 Atl. 343]; *Nisky* v. *Childs Co.*, 103 N. J. L. 464, 465 [135 Atl. 805, 50 A. L. R. 227]; *Bigelow* v. *Maine Cent. R. Co.*, 110 Me. 105 [85 Atl. 396, 43 L. R. A. (N. S.) 627]; *Valeri* v. *Pullman Co.*, 218 Fed. 519. It will thus be seen that Alabama, Connecticut, Delaware, Georgia, Maine, New Hampshire, New Jersey, and the federal courts adhere to the theory that the transaction constitutes a sale of services and not a sale of food.

On the other hand, there are decisions of other states, which we consider better reasoned, which have come to the conclusion that there is no fundamental difference between the sale of food by a dealer and a sale of a meal by a restaurant keeper. The leading case so holding is the case of *Friend* v. *Childs Dining Hall Co.*, 231 Mass. 65 [120 N. E. 407, 5 A. L. R. 1100]. In that case the Massachusetts Supreme Court reached the conclusion that, under the Massachusetts Sale Act, which is similar to section 1735 of the California Civil Code, such a transaction constituted a sale of food, and by reason of such fact an implied warranty

existed on the part of a restaurant keeper that the food so sold and served was reasonably fit for human consumption. Later cases in the same jurisdiction uphold this doctrine. (*Barringer* v. *Ocean S. S. Co.*, 240 Mass. 405 [134 N. E. 265], and *Smith* v. *Gerrish*, 256 Mass. 183 [152 N. E. 318].)

The rule is the same in New York. (*Temple* v. *Keeler*, 238 N. Y. 344 [144 N. E. 635, 35 A. L. R. 920] ; *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70 [121 N. E. 471]. See, also, *Race* v. *Krum*, 222 N. Y. 410 [118 N. E. 853, L. R. A. 1918F, 1172], *Muller* v. *Childs Co.*, 118 App. Div. 881 [171 N. Y. Supp. 541], and *Barrington* v. *Hotel Astor*, 184 App. Div. 317 [171 N. Y. Supp. 840].) In Illinois, Indiana and in Missouri the intermediate courts have arrived at the same conclusion. (*Greenwood* v. *John R. Thompson Co.*, 213 Ill. App. 371; *Smith* v. *Carlos*, (Mo. App.) 247 S. W. 468; *Heise* v. *Gillette*, 83 Ind. App. 551 [149 N. E. 182].)

Defendants argue that it is the established law of California that when the owner of a restaurant furnishes food to a customer he merely furnishes services of which food is a part, and cites *Loucks* v. *Morley*, 39 Cal. App. 570 [179 Pac. 529], and *Stell* v. *Townsends California Glace Fruits, Inc.*, 138 Cal. App. (Supp.) 777 [28 Pac. (2d) 1077], in support of this contention. The case of *Loucks* v. *Morley*, *supra*, involved the construction of code section 1775 of the Civil Code, since repealed, which imposed an implied warranty upon "one who makes a business of selling provisions for domestic use". The grounds of the decision were twofold, namely, that a restaurant keeper furnishes service to his patrons rather than sells provisions, and that the furnishing of food for immediate consumption upon the premises was not strictly and accurately within the definition of the term, "for domestic use". The first conclusion was based upon the old common-law reasoning, as expressed in the quaint phrase with reference to innkeepers and victualers, quoted in Beal on Innkeepers and Hotels, section 169, and reiterated in practically all of the cases adhering to the old rule, "He does not sell but utters his provisions." The second conclusion was based upon the fact that the dictionary defined "domestic" as "belonging to the house or household; concerning or relating to the home or family", and the fact that the word itself, in its

derivation from "domus", a house, suggested its inherent import. By this reasoning, it was decided that "for domestic use", necessarily meant for use in the home. The two associates of the writer of the opinion concurred only in the judgment, and by setting forth as their reason for such concurrence the second ground of the opinion, in effect withheld their approval of the first ground. It is apparent, therefore, that this reason became thereby only the personal opinion of the justice who wrote the opinion. Such conclusion cannot, therefore, have any controlling weight here. It should perhaps be noted that section 1775 of the Civil Code upon which the case of *Loucks* v. *Morley, supra,* was based was repealed prior to the time the cause of action in the instant case arose, and section 1735 of the Civil Code is now the section which controls the question of implied warranty of the quality of food served by restaurants.

The case of *Stell* v. *Townsends California Glace Fruits, Inc., supra,* which is a decision of the appellate division of the Superior Court of the City and County of San Francisco, was based solely on the question of negligence, and the real point was whether or not negligence had been proven. The decision expressly states, "The complaint in the present case, however, is not based upon a breach of warranty or on any contractual liability. It charges commission of a tort in the alleged failure of the defendant to use reasonable care in selecting, preparing, and serving food for consumption by plaintiff as a patron." It is obvious, therefore, that what is said in the decision with reference to implied warranty was unnecessary to the opinion and is clearly *dicta.*

One other California case has been cited as pertinent to this question, the case of *San Francisco* v. *Larsen,* 165 Cal. 179 [131 Pac. 366]. That action was for the recovery of a license tax imposed on defendant under an ordinance. The city charter then in effect exempted from paying such tax, "any person who at any fixed place of business in the city and county, sells or manufactures goods, wares and merchandise". Although the court reached the conclusion that the business of a restaurant keeper was not exempt from the levy of the license tax under the provisions of the charter, it made the following statement: "It cannot be denied that the eating of food by a customer at a restau-

rant, in the regular course of business, involves a sale of the food eaten. The price of the food alone is usually not specified, but it is included in a lump sum with the charge for services and use of its dishes, chair, and table. It is nevertheless a sale of the food consumed, within the technical definition of that term.''

We therefore hold unequivocally that the transaction between a restaurant keeper and customer constitutes a sale and that as a necessary incident to such sale there exists an implied warranty which imposes upon the restaurant keeper the obligation to furnish to patrons food ''reasonably fit'' for human consumption, and that if a patron suffer injury as a result of eating food which is not reasonably fit for human consumption, the retaurant keeper is liable in damages therefor.

No contention is made that plaintiff could not recover on the count of negligence if it has been properly pleaded and proved. In fact, such liability is expressly conceded by the arguments of defendants which are to the effect that no liability exists under the theory of implied warranty, but that the restaurant keeper's obligation is limited to the exercise of due care in the preparation and service of food furnished guests. It was held in the case of *Stell* v. *Townsends California Glace Fruits, Inc., supra,* that a duty of exercising due care in the furnishing and serving of food to guests exists on the part of a restaurant keeper, and that he is liable in damages for any breach of such duty. In Massachusetts, it is recognized that a cause of action may be predicated upon either the theory of an implied warranty or upon negligence. (*Friend* v. *Childs Dining Hall Co., supra; Ash* v. *Childs Dining Hall Co.,* 231 Mass. 86 [120 N. E. 396, 4 A. L. R. 1556].) It follows that the plaintiff was justified in including both counts in his complaint.

Defendants claim that regardless of whether or not the plaintiff correctly included in his complaint a cause of action based upon the theory of implied warranty and a cause of action based upon negligence, the trial court was justified in sustaining a demurrer to both counts for the reason that in neither count was the cause of action properly pleaded. Defendants complain that in both counts material allegations were lacking. Although we are of the opinion that both counts of the complaint might well have been pleaded

with more particularity, we prefer to rest our decision upon the broader ground that the facts stated in both counts of the complant were insufficient on which to base an action no matter how the pleading was drawn.

We will first discuss the question of whether or not the facts pleaded in the first count were sufficient to support a judgment based upon an implied warranty. Bearing in mind the exact wording of section 1735 of the Civil Code whereby the implied warranty is imposed upon a restaurant keeper, is there an obligation imposed by the statute upon a restaurant keeper to furnish perfect food to his patrons at all hazards; that is to say, is his obligation that of an absolute insurer of his food? The answer, in our opinion, must be in the negative. The words of the code section are that the food furnished by the restaurant keeper shall be ''reasonably'' fit for such purpose,—human consumption. It may well happen in many cases that the slightest deviation from perfection may result in the failure of the food to be reasonably fit for human consumption. On the other hand, we are of the opinion, that in certain instances a deviation from perfection, particularly if it is of such a nature as in common knowledge could be reasonably anticipated and guarded against by the consumer, may not be such a defect as to result in the food being not reasonably fit for human consumption.

The facts presented in the instant case we think present such a situation. We have examined a great many cases dealing with the question of the liability of restaurant keepers which arose out of the serving of food which was held to be unfit for human consumption, and we have failed to find a single case in which the facts are similar to the instant case, or in which a court has extended the liability based upon an implied warranty of a restaurant keeper to cover the presence in food of bones which are natural to the type of meat served. All of the cases are instances in which the food was found not to be reasonably fit for human consumption, either by reason of the presence of a foreign substance, or an impure and noxious condition of the food itself, such as for example, glass, stones, wires or nails in the food served, or tainted, decayed, diseased, or infected meats or vegetables. Although it may frequently be a question for a jury as the trier of facts to determine whether or not the particular defect alleged rendered the food not reasonably

fit for human consumption, yet certain cases present facts from which the court itself may say as a matter of law that the alleged defect does not fall within the terms of the statute. It is insisted that the court may so determine herein only if it is empowered to take judicial notice of the alleged fact that chicken pies usually contain chicken bones. It is not necessary to go so far as to hold that chicken pies usually contain chicken bones. It is sufficient if it may be said that as a matter of common knowledge chicken pies occasionally contain chicken bones. We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones. At least he cannot hold the restaurant keeper whose representation implied by law is that the meat dish is reasonably fit for human consumption, liable for any injury occurring as a result of the presence of a chicken bone in such chicken pie. In the case of *Goetten* v. *Owl Drug Co.*, L. A. No. 15624 (*post*, p. 683 [59 Pac. (2d) 142]), this day decided, we held that the application of the rule of implied warranty might impose a heavy burden upon the keeper of restaurants and lunch counters, but that considerations of public policy and public health and safety are of such importance as to demand that such obligation be imposed. This is true, but we do not believe that the onerous rule should be carried to absurd limits. Certainly no liability would attach to a restaurant keeper for the serving of a T-bone steak, or a beef stew, which contained a bone natural to the type of meat served, or if a fish dish should contain a fish bone, or if a cherry pie should contain a cherry stone— although it be admitted that an ideal cherry pie would be stoneless. The case of a chicken bone in a chicken pie is, in our opinion, analogous to the cited examples, and the facts set forth in the first count of the complaint do not state a cause of action.

With reference to the count based upon negligence, the same logic and reasoning apply. The facts pleaded do not establish a lack of due care on the part of the restaurant

keeper. We do not believe it is a question of contributory negligence on the part of the customer, but a question of whether or not a restaurant keeper in the exercise of due care is required to serve in every instance a perfect chicken pie, in that all bones are entirely eliminated. If the customer has no right to expect such a perfect product, and we think he is not so entitled, then it cannot be said that it was negligence on the part of the restaurant keeper to fail to furnish an entirely boneless chicken pie. The facts set forth in the second count do not, therefore, state a cause of action.

The logic of our decision with reference to both counts of the complaint leads to an affirmance of the trial court in sustaining the demurrer to both counts of the complaint and the entry of judgment in favor of the defendants.

The judgment is affirmed.

Shenk, J., Thompson, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.