Rosario Piazza, Plaintiff, *v.* Fischer Baking Company, Defendant.

City Court of the City of New York, Kings County, March 15, 1950.

*Joseph A. Mauro* for plaintiff.

*A. I. Madison* for defendant.

Harrison C. Glore, Official Referee. This action is brought to recover damages for injury to plaintiff's mouth and teeth by coming in contact through the alleged negligence of defendant, with a small screw, while biting into a slice of rye bread manufactured by defendant.

Defendant is engaged in manufacturing products for consumption as human food, and is chargeable with that maximum degree of care which a reasonably prudent person would be required to use, while engaged in a business exacting meticulous care.

At the trial there was insufficient evidence to support a finding of negligence so viewed and considered. It was urged at the

trial, however, that if the screw was found in the bread, as the bread left defendant's bakery, no element of ordinary negligence was essential, as the presence of the screw constituted negligence as a matter of law. It was further urged that section 200 of the Agriculture and Markets Law creates a duty, and for the benefit of the general public, required compliance therewith by defendant; if the facts warrant a finding of prohibited substance in the bread, within the meaning of the statute, such finding constitutes negligence as a matter of law. It was further urged that the statute itself need not be pleaded.

Decision of the Court of Appeals in *Pine Grove Poultry Farm* v. *Newtown By-Products Mfg. Co.* (248 N. Y. 293) was submitted as a controlling authority. As additional authority there was cited *Salzano* v. *First Nat. Stores* (268 App. Div. 993), *Catalanello* v. *Cudahy Packing Co.* (27 N. Y. S. 2d 637) and *Alphin* v. *La Salle Diners* (197 Misc. 415). *Pine Grove Poultry Farm* v. *Newtown By-Product's Mfg. Co.* (*supra*) was an action in negligence against defendant engaged in the manufacture of poultry feed in which was traced particles of finely ground steel wire. Plaintiff in that case purchased a large quantity of this feed and fed same to its ducks. Several thousand thereupon died. The court held the Farms and Markets Law prohibited the sale of "feeding stuffs" containing any substance injurious to the health of animals and that a violation of the statute was negligence as a matter of law.

Obviously the finely ground steel wire, for whatever reason included in the feed, whether as roughage, for weight or as bulk, became an ingredient, a component or elementary part, of the feed stuff manufactured by defendant; bringing the feed within the type defined by the statute, as injurious to the health of animals and therefore its sale was prohibited; an entirely different situation from that presented in the case at bar.

The *Pine Grove* case (*supra*) was decided in May, 1928, the decision being written by Judge O'Brien. Seven years later, in May, 1935, the Court of Appeals, again writing through Judge O'Brien, refused to adopt the same view expressed in the *Pine Grove* case (*supra*) where the foreign substance was not a component of the food.

In *Bourcheix* v. *Willow Brook Dairy* (268 N. Y. 1, 6) the Court of Appeals in a matter involving a claim for injuries to plaintiff because of broken glass allegedly contained in a bottle of cream, distinguished between that case and the *Pine Grove* case (*supra*) as follows: "In *Pine Grove Poultry Farm, Inc.*,

v. *Newtown By-Products Mfg. Co.* (248 N. Y. 293) sections 128 and 130 of the Farms and Markets Law (Cons. Laws, ch. 69; now Agriculture and Markets Law) were under consideration. There, particles of steel wire had been ground so fine as to enter into and become a component of the food. Here, the pieces of glass were no element in the composition of the cream."

The court stated earlier (pp. 5-6): " These provisions, when read together, indicate that the legislative purpose was to prevent the sale of milk and cream which have been subjected to some process by which their texture had been or might be rendered spurious. Water would decrease its strength, dirt of any kind its purity and other ingredients which had mixed with and become a part of it would impair its natural quality. These provisions do not appear to be aimed at foreign substances such as stones or tacks or broken glass, which do not become part of the substance which ' masquerades as cream ', but were intended to preserve the quality of the liquid and to establish its standard."

That is precisely the situation in the instant case. The screw which was allegedly found in the slice of bread which plaintiff claims he ate, was not part of the substance which is known as bread.

The purpose of the law is obviously to preserve the quality of food products by preventing adulteration. The accident of the existence of the screw in the bread, might be the result of negligence, but does not come within the purview of the prohibition of adulteration set forth in section 200 of the Agriculture and Markets Law.

After trial upon the merits, decision is given for defendant. Judgment accordingly.