Anthony J. Di Gtovanna, J.
In an oral complaint the first-cause of action sought damages from Dilhert for breach of warranty “ as the result of a foreign substance in said jar ” and in the second cause of action damages from Airlines on *937 the theory of its negligence in the manufacturing, bottling and production of “ Simon Fisher Lekvar (prune butter).” Dilbert cross-claimed against Airlines separately on the theory of negligence and breach of warranty.
The trial court rendered judgment in favor of plaintiffs against Dilbert on the breach of warranty cause of action only and impliedly dismissed plaintiffs’ cause of action based upon negligence of Airlines. Judgment was rendered in favor of defendant against Airlines in the same amount as awarded to plaintiff without the court specifically stating whether the recovery was based upon the breach of warranty cause of action or the negligence cause of action.
In her bill of particulars the plaintiff claimed she was injured by a “foreign substance found in contents of said jar” and that said “ foreign substance contained in prune butter in said jar consisted of a small piece of broken prune pit ” and further stated “ that the defendants breached said warranty in that the jar of prune butter contained a broken piece of broken pit; said food with the foreign substance therein being not fit for human consumption.” Plaintiff claims she was injured by a foreign substance. No appeal has been taken by Dilbert from the judgment, but such failure on Dilbert’s part to take appeal does not affect the right of Airlines to attack the judgment in plaintiff’s favor. Accordingly, this appeal raised the questions as to whether a piece of prune pit in prune butter constitutes a foreign substance and whether Dilbert was entitled to recover judgment on the cross complaint on either theory of breach of warranty or negligence.
Nowhere in the record does there appear any fact showing the purchase by Dilbert of the prune butter from Airlines; nor may such fact be inferred from any of the evidence in the record. Consequently, if Dilbert is permitted judgment on the cross complaint, such judgment must be rendered in the absence of proof of privity both in connection with its claim for breach of warranty and on its claim on the theory of negligence. I do not believe that this record justifies a judgment in favor of Dilbert against Airlines on the cross complaint. The alleged injurious substance is in fact not a foreign substance and, consequently, cannot be the basis of an action for injuries by reason of the presence of the foreign substance. In the absence of proof of privity, Dilbert could not recover on the breach of warranty cause of action on the cross complaint, nor could it recover on the negligence cause of action set forth in the cross complaint.
*938 There seems to be a dearth of eases in this State defining the words “ foreign substance.” In O’Hare v. Petersen (174 Misc. 481, 484) recourse was had to the definition appearing in the new Merriam Webster Dictionary (2d ed.) which gives the following definition: “Not organically connected or naturally related. A substance occurring in any part of the body or organism where it is not normally found. Usually introduced from without.” And “ Deleterious to hurt, damage, hurtful or destructive, noxious, pernicious.” Other States have had occasion to further define and apply such definition. In Brown v. Nebiker (229 Iowa 1223) death ensued to a guest from infection in the wall of the esophagus resulting from penetration of a piece of pork chop or bone thereof. The court held that such piece of bone was not a foreign substance. Recourse was had therein to many cases of other States. Mention was made (p. 1229) of the fact that there are “ a number of cases where different kinds of material have been found in food which without question were things entirely foreign to the food, such as glass, wire, nails and things of that nature, but these cases are far from holding that a small piece or sliver of a bone in a pork chop is a foreign substance to the chop.” Quoting from Mix v. Ingersoll Candy Co. (6 Cal. 2d 674, 681) the court said (p. 1230): “ 1 The words of the Code section are that the food furnished by the restaurant keeper shall be “reasonably” fit for such purpose — human consumption. It may well happen in many eases that the slightest deviation from perfection may result in the failure of the food to be reasonably fit for human consumption. On the other hand, we are of the opinion, that in certain instances a deviation from perfection, particularly if it is of such a nature as in common knowledge could be reasonably anticipated and guarded against by the consumer, may not be such a defect as to result in the food being not reasonably fit for human consumption.’ ” In the Mix case, the patron of a restaurant had been injured by a sharp bone while eating chicken pie. In discussing whether such chicken bone was a foreign substance, the California court said (6 Cal. 2d 681): “ The facts presented in the instant case we think present such a situation. We have examined a great many cases dealing with the question of the liability of restaurant keepers which arose out of the serving of food which was held to be unfit for human consumption, and we have failed to find a single case in which the facts are similar to the instant case, or in which a court has extended the liability based upon an implied warranty of a restaurant keeper to cover the presence in food of *939 bones which, are natural to the type of meat served. All of the cases are instances in which the food was found not to be reasonably fit for human consumption, either by reason of the presence of a foreign substance, or an impure and noxious condition of the food itself, such as for example, glass, stones, wires or nails in the food served, or tainted, decayed, diseased, or infected meats or vegetables.” It further continued (p. 682): “We have no hesitancy in so holding, and we are of the opinion that despite the fact that a chicken bone may occasionally be encountered in a chicken pie, such chicken pie, in the absence of some further defect, is reasonably fit for human consumption. Bones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones. ’ ’
In discussing the duty of the consumer with relation to that food, the court said (p. 683) citing Goetten v. Owl Drug Co. (6 Cal. 2d 683): “We do not believe it is a question of contributory negligence on the part of the customer, but a question of whether or not a restaurant keeper in the exercise of due care is required to serve in every instance a perfect chicken pie, in that all bones are entirely eliminated. If the customer has no right to expect such a perfect product, and we think he is not so entitled, then it cannot be said that it was negligence on the part of the restaurant keeper to fail to furnish an entirely boneless chicken pie.”
In discussing (Brown v. Nebiker, 229 Iowa 1223, 1232, supra) the Silva v. Woolworth Co. case (28 Cal. App, 2d 649, 650): “‘The facts are undisputed; the only question involved is whether as a matter of law they constitute a breach of warranty, or negligence. Plaintiff ordered a “ special plate ” of roast turkey with dressing and vegetables. When it was served to her, she removed the one slice of turkey and ate some of the dressing. She choked, or gagged, and with the aid of a bystander, emitted a small bone about three-quarters of an inch long, one-quarter of an inch wide, and one-eighth of an inch thick. This was carefully preserved, measured, and photographed, and placed in evidence at the trial.’ ”
In relying upon the Mix case (Mix v. Ingersoll Candy Co,, 6 Cal. 2d 674, supra) the court therein (Silva v. Woolworth Co., supra, pp. 650-651) said: “ The criterion upon which liability is determined in such cases is whether the object causing the injury is ‘ foreign ’ to the dish served. It was there said that: ‘ Bones which are natural to the type of meat served cannot *940 legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones.’ The direct holding was that a chicken bone was not a foreign substance to a chicken pie just as a beef bone found in a steak or beef stew or a fish bone found in a fish dish does not render the food unfit for human consumption.”
The same principle was followed in Lamb v. Hill (112 Cal. App. 2d 41) and Rowe v. Louisville & Nashville R. R. Co. (29 Ga. App. 151).
It can be seen, therefore, that a finding that a prune pit is a foreign substance is not in conformity with the case law of several sister States. Cases within our own State have involved mainly substances such as metal objects, stones, mice, bugs, worms, poisons and other such items. While plaintiff’s cause of action for breach of warranty is not directly involved on this appeal, nevertheless serious doubt exists as to whether judgment should have been rendered in plaintiff’s favor in the first instance.
But assuming that a piece of prune pit does constitute a foreign substance, I find that Dilbert is not entitled to recover on the cross complaint against Airlines. This cause of action based upon breach of warranty is required to be dismissed by reason of the doctrine set forth in Chysky v. Drake Bros. Co. (235 N. Y. 468) and recently reaffirmed in Greenberg v. Lorenz (7 A D 2d 968 [1st Dept., 1959]) and Burke v. Associated Coca-Cola Bottling Plants (7 A D 2d 942 [3rd Dept.]). There is no proof of privity between Dilbert and Airlines. The question now arises as to whether this failure of proof of privity is sufficient, under the circumstances of this case, to defeat Dilbert’s cross complaint against Airlines on the theory of negligence. I believe it is.
Plaintiff’s evidence consisted of proof of the purchase of the sealed bottle from Dilbert, its subsequent consumption and the injury to one of the plaintiffs from the small fragment of prune pit. Dilbert rested entirely upon plaintiffs ’ case without offering any evidence. Airlines produced its plant manager as a witness whose duties included supervision of all angles of the plant, including the manufacturing process in detail as follows: “ This product is made out of dried prunes that are cooked until they’re soft. Then they are run through a pulping machine which has a fine screen perforation maybe one-sixteenth of an inch in diameter. These cooked prunes are run through this pulper with paddles inside, which drives the pulp through the *941 strainer through this sieve, and the pits came out at the other end completely separated. Then the pulp is transferred into cooking kettles with sugar added, and then run through the filling machine.” He further said the bottles are then immediately secured and capped tightly.
On cross-examination Meschter stated that when the dried prunes are cooked there is a pit in the prune, that the container has a stainless steel agitator in the form of a paddle which revolves and whips the soft prune so the pulp goes through the strainer. He said that it is possible for a piece of prune pit to break off, but he also said in answer to the following question:
“ Is it also possible that as a result of the force of the agitator pushing the prune through the sieve, that a piece of prune pit of the size you have heard described here this morning to get through a strainer? ” He answered: “ I would say no.”
In answer to the following question:
“Is it probable?
“It is not probable because the perforation is so small that anything of the size you are talking about could not go through.” He described the sieve as of stainless steel with perforations and the screen as being about three and a half feet long and about 12 or 14 inches wide and having a depth of 6 or 8 inches. The perforations are pin point in size.
In answer to the following question: “How about the
screen? Have you ever found any of it to be damaged? ” He answered: “We have not found anything damaged in my time, that would cause anything to happen, that could go through the screen.” He made the following answers to the following questions:
“ Q. Do you examine these screens periodically? A. Every day, at the end of the route?
“ Q. You don’t? A. No.
“ Q. Do you do it? A. I don’t personally do that.
“ Q. Other people do that? A. My factory superintendent does that.
“ Q. You don’t know whether a damage in the screen may have occurred during the process and may have been removed by somebody else and a new screen put in place? A. Oh, no, we would know that; we would know that.”
Dilbert made no effort to contradict any of this testimony. Apparently it believed, and so did the trial court, that proof of privity was not necessary because the prune pit was of such a nature as to be an exception to the general rules respecting liability of manufacturers for negligence. In MacPherson v. *942 Buick Motor Co. (217 N. Y. 382) an exception was made in the law of negligence permitting the maintenance of an action against a manufacturer where the manufactured article was inherently dangerous or in the uses to which it is put it could become inherently dangerous. In my opinion, the exception :created in the MacPherson case was never intended to cover a small fragment of prune pit such as is involved in this case. To hold otherwise would be tantamount to a holding that in all cases a manufacturer of food products must respond in damages to an injured person and that the rule of privity does not apply therein. While it is true that in recent food cases there has been a tendency to broaden the liability of retailers and manufacturers in their respective liabilities, the precise question raised herein was never presented. Those cases involved obviously dangerous foreign substances. Glass, wire, metal tags, mice, poison and other like substances are, without further comment, clearly inherently dangerous. But wherein can a rule of law be enunciated holding that a piece of prune pit natural to the product itself is an inherently dangerous substance 1 Consequently, the failure of Dilbert to have proven privity between itself and Airlines, in this case, operates to prevent the application of the MacPherson exception in favor of Dilbert.
Another serious situation concerning rules of law has appeared in this case. Dilbert rested upon plaintiffs’ proof of the presence of prune pit in the prune butter. Airlines presented proof of its manufacturing process. This is a negligence case. Negligence can be predicated solely upon a finding that one has failed to use ordinary and prudent care in the premises. Dilbert’s case, whether it be considered a res ipsa loquitur situation or a circumstantial evidence situation, made out a prima facie case only until such time as the defendant produced evidence of freedom from negligence. When that was done, the burden of going forward was recast upon Dilbert to prove the actual negligence of Airlines. That was not done in this case. It has been argued that in view of the fact that the manufacturing process is solely within the knowledge of the manufacturer, such proof would be unavailable to Dilbert. That is not so. By discovery and inspection of the manufacturing machinery, by examination as to prior similar incidents, Dilbert might have been in a position to have produced other evidence of negligence than the mere presumption. Further, Dilbert could have produced expert testimony concerning the manufacturing process which would have raised a question of fact as to whether such process was in fact that of an ordinary and reasonable manufacturer of prune butter.
*943 In Roth v. Ho Penn Garage Corp. (56 N. Y. S. 2d 340 [App. Term, 1st Dept., 1945]) the court said: “ The appellant having shown that it used due care in the premises overcame the presumption of negligence and it was thereupon the duty of plaintiffs to go forward with affirmative proof of defendant’s negligence. This the plaintiffs failed to do. Judgment reversed ”.
In Plumb v. Richmond Light & R. R. Co. (233 N. Y. 285) the court said: “ Shifting the burden of explanation or of going on with the case does not shift the burden of proof. If a satisfactory explanation is offered by the defendant, the plaintiff must rebut it by evidence of negligence or lose his case. * * * [p. 288], The mere fact of a collision, under circumstances consistent with due care on the part of the carrier, may not, in reason, preponderate over credible evidence showing that mismanagement of the other vehicle was the proximate cause of the injury” (p. 290).
In Sweeney v. Edison Elec. Illuminating Co. (158 App. Div. 449 [2d Dept.]), the court said: “ So far as it enters into the matter the burden of showing it is on the person having the thing in its control. (Griffen v. Manice, 166 N. Y. 188.) If it were known the defendant’s care in respect to the cause could be considered. But if the cause were not discovered, yet if the defendant exercised reasonable care in regard to the things that in reasonable expectation would keep the lamp intact, it was faultless. (Hubener v. Heide, 73 App. Div. 200, 206.) The burden of explanation is thrown on the defendant (Robinson v. Consolidated Gas Co., 194 N. Y. 37), but to explain that it was not negligent, rather than the cause of the accident, (Piehl v. Albany Railway, 30 App. Div. 166,169.) When the rule res ipsa loquitur is applicable the facts are deemed to 1 afford sufficient evidence that the accident arose from want of care on its part ’ (Breen v. N. Y. C. & H. R. R. R. Co., 109 N. Y. 297, 300), and the defendant must rebut this inference. But it is not necessary to show the cause of the accident in order to do this. It would be helpful if the defendant could make the specific cause known and then show its care respecting it. But if it negatives the presumption of negligence by showing its care as to all probable cause, that is sufficient ” (p. 452).
In Gross v. Temp Realty Corp. (5 A D 2d 825) the court said: ‘ ‘ Plaintiff to sustain her recovery relies upon the rule of res ipsa loquitur. When that rule is applied, however, the burden of showing that the injury is due to the negligence of the defendant rests on the plaintiff (George Foltis, Inc. v. City of New *944 York, 287 N. Y. 108, 118). In other words, * All that the doctrine accomplishes is that when the surrounding circumstances have been sufficiently proven, a prima facie ease is presented and the defendant is required to come forward with evidence explaining the event and disproving the negligence. If a satisfactory explanation is offered by the defendant, the plaintiff must rebut it by evidence of negligence or lose his case. On the whole case there must be a preponderance of evidence in favor of plaintiff’s contention.’ (1 Warren’s New York Negligence, p. 106.) Examining the record in the light of this rule, we find no evidence by plaintiff to rebut the substantial proof of the defendants that an unknown third party came in contact with the glass wall causing it to break with the resulting injuries to the plaintiff. Accordingly, on the facts and on the law and in the interests of justice there should be a new trial.”
It has been said in Warren’s Negligence in the New York Courts (Vol. 1, pp. 105-106): “ Nor does the doctrine of res ipsa loquitur create a presumption of negligence as a matter of law. The most that it does is to establish prima facie a case from which, in the absence of evidence to the contrary, the jury may infer negligence. * * * The fact that under the doctrine the negligence of the defendant may prima facie be proved by evidence of the happening of the accident and the surrounding circumstances, does not shift the burden of proof. It still remains upon the plaintiff to establish by a fair preponderance of all the evidence that negligence did exist. All that the doctrine accomplishes is that when the surrounding circumstances have been sufficiently proven, a prima facie case is presented and the defendant is required to come forward with evidence explaining the event and disproving the negligence. If a satisfactory explanation is offered by the defendant, the plaintiff must rebut it by evidence of negligence or lose his case. On the whole case there must be a preponderance of evidence in favor of plaintiff’s contention.” (Italics ours.)
Nor is it required that a defendant explain the precise cause of the accident. The rule of res ipsa loquitur merely requires the defendant to show that it had used due care. It is not a part of its proof to show how the accident happened. In Klein v. Fraser (169 App. Div. 812, 814) the court said: “ What was cast upon the defendant by the fact of the accident was, not to prove just how the accident happened, but that she had exercised due care to guard against the happening of such an accident.” Nor is this action one in which sections 199-a and 200 of the Agriculture and Markets Law could be the basis of liability. *945 The' prune pit was not an adulteration of food because it is neither poisonous nor deleterious in its nature; nor is it an added poisonous or deleterious substance which is unsafe; nor is it part of a diseased, contaminated, filthy, putrid or decomposed substance; nor has it been produced, prepared, packed or sold under unsanitary conditions; nor does such piece of prune pit require a finding that the prune butter had been contaminated with filth. None of the subdivisions of section 200 apply. The Court of Appeals in Bourcheix v. Willow Brook Dairy (268 N. Y. 1) held that pieces of glass in a bottle of milk did not constitute a violation of former section 199 (now § 200) because that was not an adulteration within the meaning thereof. In Piazza v. Fischer Baking Co. (197 Misc. 418, affd. 200 Misc. 834), the presence of a screw in a slice of rye bread was held not to be an adulteration within the meaning of section 200. Certainly a product natural to the prune itself cannot be considered an adulteration within the meaning of section 200.
Under the circumstances, I am of the opinion that Dilbert failed to make out a cause of action in negligence against Airlines.
The judgment, insofar as it granted judgment on the cross complaint, should be reversed and the cross complaint dismissed in its entirety, with $30 costs to Airlines against the defendant Dilbert.