Dolan, J.
This report involves an action in which the plaintiff, Donna O’Brien, seeks to recover damages on theories of breach of warranty and negligence for injuries she sustained while eating a chicken pie purchased from the defendant and taken home for consumption.[2]
Briefly stated, the plaintiff, while at home eating the chicken pie, felt a sharp object in the throat and experienced breathing difficulty. She was taken to the hospital where the object was surgically removed. The object was identified as á bone.
The trial judge found for the plaintiff, holding the defendant liable for both *151 breach of warranty and negligence. He submitted the following findings of fact:
I find that the defendant sold a chicken pie to the plaintiff; that said pie contained a foreign body, to wit; a jagged bone the approximate size of a dime. The defendant manufactured the said pie. I further find the defendant negligently left the bone in the pie and that the pie was unmerchantable. Customers do not expect to find bones in their chicken pies.
The defendant, on this appeal, claims error in an evidential ruling by the trial judge and in the trial judge’s denial of certain requests for rulings of law relating to the sufficiency of evidence.
The defendant’s first contention is that the trial judge erred in admitting Exhibit 2 into evidence, i.e. a small bottle containing a bone the approximate size of a dime. The plaintiff introduced this exhibit as the object which was surgically removed from her throat.
The defendant argues that the object should not have been admitted as the plaintiff did not lay the proper foundation for its admission. ‘‘[W]hen real evidence is offered an adequate foundation for admission will require testimony first that the object offered is the object which was involved in the incident, and further that the condition of the object is substantially unchanged.” McCORMICK ON EVIDENCE §212, at 527 (2d ed. 1972). See also P. LIACOS, HANDBOOK OF MASSACHUSETTS EVIDENCE 394 (5th ed. 1981); Nesci v. Angelo, 249 Mass. 508, 510-11 (1924); and Irwin v. Ware, 392 Mass. 745, 750-51 (1984). The defendant does not appear to be challenging the latter requirement of this two-pronged test, otherwise known as the “chain of custody” doctrine. Rather, the thrust of the defendant’s objection is that the plaintiff failed to establish that Exhibit 2 was actually the object removed from her throat.
The hospital record that was introduced into evidence indicates that a bone was surgically removed from the plaintiffs throat. The surgeon did not testify at trial, and the plaintiff did not see the bone enter or exit from her throat. The plaintiff did testify that, following the operation, Exhibit 2 was delivered to her by her surgeon in her hospital room. Thus, it appears that the basis for the admission of Exhibit 2 was founded on an inference by the trial judge that the bone shown to the plaintiff was in fact the bone removed from her throat.
A trier of fact has the right to draw reasonable inferences. Johnson v. Angel, 23 Mass. App. Dec. 19, 23 (1961); Allen v. Essanee, Inc., 309 Mass. 1, 7 (1941). “[IInferences to be drawn in a given matter depend on facts, circumstances, and teachings of experience.” Massachusetts General Hospital v. City of Chelsea, 23 Mass. App. Dec. 58, 65 (1961). We are of the opinion that in the circumstances of this instant case the trial judge's inference was reasonable. Consequently, we find that the trial judge did not err in admitting Exhibit 2 into evidence.
The defendant also claims error in the trial judge’s denial of a request for a ruling that the evidence did not warrant a finding for the plaintiff on her breach of warranty claim. Thus, we must examine the sufficiency of the evidence presented as to the alleged breach of warranty.
Under G. L. c. 106, § 2-314, a seller of food impliedly warrants that the food is fit to be eaten. In this case, the trial judge found that there was a bone in the chicken pie sold to the plaintiff by the defendant. There was no specific finding as to whether the bone was a chicken bone or a non-chicken bone. Therefore, the question before us is whether the presence of a bone of any type in the chicken pie sold by the defendant rendered the pie unfit to be eaten.
The landmark case in the area of breach of warranty due to bones in food is *152 Webster v. Blue Ship Tea Room, Inc., 347 Mass. 421 (1964). In that case, the court found that a fish bone in fish chowder does not constitute a breach of warranty since consumers should reasonably expect to find fish bones in fish chowder. The court examined several age-old recipes for fish chowder, none of which called for the removal of bones from the fish. The court stated: “[w]e should be prepared to cope with the hazards of fish bones, the occasional presence of which in chowders is, it seems to us, to be anticipated, and which, in light of a hallowed tradition, do not impair their fitness or merchantability.” Webster, 347 Mass. at 426.
The court in Foss v. Carpenter Enterprises, Inc., 1985 Mass. App. Div. 82, 84 (1985) also applied the “reasonable expectation” doctrine in finding that bones in a filet of haddock do not constitute a breach of warranty. However, the Foss court reached the same result by also applying the “foreign-natural” doctrine which first emerged in Mix v. Ingersoll Candy Co., 6 Cal. 2d 674, 59 P.2d 144 (1936). That doctrine states: “ ‘[bJones which are natural to the type of meat served cannot legitimately be called a foreign substance, and a consumer who eats meat dishes ought to anticipate and be on his guard against the presence of such bones.’ ” Foss, 1985 Mass. App. div. at 84 [quoting Mix v. Ingersoll Candy Co., 6 Cal. 2d 674, 682, 59 P.2d 144, 148 (1936)]. Thus, a fish bone in a fish dish would not constitute a breach of warranty under the “foreign-natural” doctrine.
There is some argument as to whether the “foreign-natural” doctrine is applicable in Massachusetts. The Supreme Judicial Court did not apply the doctrine in Webster. If it had, the opinion would certainly have been more' succinct since fish bones are definitely not foreign to fish. The “reasonable expectation" test appears to us to be the preferred doctrine, and we reject a test that would automatically find no breach of implied warranty if a chicken pie contained a chicken bone, but would find a breach of warranty if a chicken pie contained a non-chicken bone.
The trial judge in the instant case seems to have applied the “reasonable expectation” test when he stated “ [c] ustomers do not expect to find bones in their chicken pies.” His characterization of the bone as a “foreign body” may be ambiguous since there was no finding as to whether or not the bone was a chicken bone or non-chicken bone. However, liability for breach of warranty was based on the “reasonable expectation” test which does not require establishing the nature of the bone. The test is whether or not a consumer would reasonably expect to find a bone in her chicken pie. Foss, 1985 Mass. App. Div. at 84.
We note the emphasis placed on fish chowder recipes by the court in Webster. Those recipes did not call for the removal of fish bones. However, the recipes for chicken pie cited by the plaintiff specifically call for the removal of all bones.[3] In addition, the defendant’s own recipe begins with the purchase of boneless chicken meats from its supplier. It is this difference in the nature of chicken pie as opposed to fish chowder which allows us to distinguish the present case from Webster.
We therefore conclude that the trial judge did not err in finding a breach of warranty. When a consumer purchases a prepared chicken pie she should not be forced to chop up the pie looking for bones since she would reasonably *153 expect the seller to have removed any bones. Since the presence of bones in food can be extremely harmful or even fatal, we do not think it unfair to place the burden of removing bones from a chicken pie on the seller of such pie.
The defendant also claims that the trial judge’s allowance of his request for a ruling that “the presence of a chicken bone in a chicken pie does not impair the fitness of the pie or its merchantability” (citing Webster) is inconsistent with his finding of a breach of warranty. First, it should be pointed out that in the report the defendant is not claiming to be aggrieved by the allowance of this ruling. In fact, we are of the opinion that the request should have been denied as an improper statement of the law since Webster dealt with fish bones not chicken bones. However, since the trial judge made no factual finding that the bone was in fact a chicken bone, no prejudice to the defendant resulted from this ruling.
The defendant additionally claims in the report to be aggrieved by the denial of his request for a ruling that “the possible presence of a chicken bone in a chicken pie is something an eater is reasonably expected to anticipate and guard against” (citing Webster). The trial judge did not err in denying this request. A request of ruling of law must be granted only if (a) the request states a correct rule of law, (b) it is pertinent to the issues and (c) it is applicable to the evidence. Snyder v. Rosen, 342 Mass. 116, 118 (1961). This request incorrectly states the holding in Webster and is inapplicable to the evidence when it refers to a “chicken bone.” Thus, it was correctly denied.
The defendant also claims error in the trial judge’s denial of a request for a ruling that the evidence did not warrant a finding for the plaintiff on her negligence claim. Again, an examination of the sufficiency of the evidence presented as to negligence is required.
Negligence by a manufacturer of a food product is usually based on a failure to exercise care in the preparation of the food. See Johnson v. Stoddard, 310 Mass. 232 (1941) and Wernick v. Bob Ware’s Food Shops, Inc., 27 Mass. App. Dec. 19 (1962). More specifically, a manufacturer has a duty to reasonably inspect its product for the possible presence of substances which could injure a consumer. Wernick, 27 Mass. App. Dec. at 21-22.
In the instant case, there was no reported evidence with respect to the inspection by the defendant of the chicken pie for the possible presence of bones. In fact, there was no evidence as to how the defandant manufactured the pie other than that the chicken was purchased from a supplier and delivered in packages. While evidence of negligence may have been presented at trial, our review is limited to only the evidence which is contained in the report.
We therefore find error in the trial judge’s finding the negligence by the defendant because there are no facts contained in the report that would warrant such a finding. The finding for the plaintiff on Count II, negligence, is reversed. The report is dismissed with respect to the other counts.

Ms. O’Brien’s husband, Steven O’Brien, also a plaintiff in this action, seeks to recover for his loss of consortium due-to his wife’s injuries. Defendant made no argument in its brief with respect to Mr. O’Brien’s claim. Accordingly, we do not review his claim for loss of consortium damages. ,

“Remove the chicken from its broth, cut off the skin, and puli the meat from the bones. It is often easiest if done with your fingers. Cut the chicken into bite size pieces.” S. PRUDY, AS EASY AS PIE, 373-374 (1984). “Remove all skin, bones, gristle, and any remaining'fat from the chicken.” N. HAZELTON, AMERICAN HOME COOKING, 60-61 (1983). “When done pull meat off bones and cut into bite-sized chunks.” GREAT NEW ENGLAND RECIPES, 246 (S. Taylor 1983).